IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOWER AUTOMOTIVE, LLC and TOWER AUTOMOTIVE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> LUMBERMENS MUTUAL CASUALTY COMPANY, <br><br> Defendant. | Case No. 08 C 2218 <br><br> Judge: Hon. Virginia M. Kendall |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

## I.  INTRODUCTION

The claims of Plaintiffs Tower Automotive, LLC and Tower Automotive, Inc. (collectively, "Tower") should be dismissed because they are contradicted by the very contract—a settlement agreement relating to prior litigation between the parties (the "Settlement Agreement")—upon which Tower relies.  The Settlement Agreement does not impose any duty upon Defendant Lumbermens Mutual Casualty Company ("Lumbermens") that Tower claims to have been breached.  Put another way, Lumbermens was not obligated to do what Tower claims that Lumbermens did not do.

The Settlement Agreement governs, *inter alia*, the amount of collateral to be maintained by Tower to secure Tower's claim and other loss payment obligations under insurance policies issued by Lumbermens.  Tower's claims arise from Lumbermens annual adjustment of the amount of that collateral—in accordance with the terms of the Settlement Agreement—and Tower's request for information and documentation to support that adjustment.  Specifically, Tower's breach of contract claim (Count I) alleges

that Lumbermens breached the Settlement Agreement by imposing a 35% "credit surcharge" upon Tower and by not providing an explanation and sufficient documentation satisfactory to Tower for that collateral adjustment. Similarly, Tower's claim for declaratory judgment (Count II) seeks a declaration that the Settlement Agreement imposes an obligation upon Lumbermens to provide the requested explanation and documentation as well as a declaration that Lumbermens breached the Settlement Agreement by not providing the requested explanation and documentation.

However, contrary to Plaintiff's allegations, the Settlement Agreement requires only that Lumbermens evaluate and adjust the amount of collateral to be maintained by Tower, consistent with its normal business practices—and imposes no duty on the part of Lumbermens to provide any explanation or backup documentation. Accordingly, Tower's Complaint is contrary to the plain language of the Settlement Agreement, and each of Tower's claims should be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

## II.    ALLEGED FACTUAL BACKGROUND[1]

In or about early 2007, Tower Automotive, Inc. was involved in bankruptcy proceedings in the United States Bankruptcy Court for the Northern District of New York. (Compl. ¶1.) During those proceedings, Tower Automotive, Inc. asserted an adversary proceeding against Lumbermens (the "Adversary Proceeding"). (Compl. ¶1.) That Adversary Proceeding arose from a dispute regarding monies that Lumbermens claimed were owed to it by Tower (which Tower denied) and involved the parties' respective rights to collateral securing Tower's claim and other loss payment obligations

---

[1] Solely for purposes of Defendants' Motion to Dismiss, the facts alleged in Plaintiff's Complaint are assumed to be true.

under workers compensation, general liability, and automotive liability policies issued by Lumbermens between April 1997 and April 2003 (the "Collateral"). (Compl. ¶2.) The Collateral is in the form of letters of credit issued by Tower. (Compl. ¶3; Ex. A.)

On or about May 9, 2007, Tower and Lumbermens entered into the Settlement Agreement, pursuant to which the parties settled the Adversary Proceeding. (Compl. ¶1.) The Settlement Agreement provides, in relevant part.

> 7. **Lumbermens' Continuing Review of Collateral**
>
> \* \* \*
>
> On or about November 1, 2007, and at annual intervals thereafter, Lumbermens shall perform a review, pursuant to the Policies and incorporating Lumbermens' usual and customary methodology to determine the adequacy of the Collateral at such time and shall, when warranted, promptly cause an adjustment of the Collateral. For the avoidance of doubt, Lumbermens' usual and customary methodology shall involve the use of its loss development factors specified in the Policies and, if and when such contractual factors are not specified, shall incorporate Lumbermens' actuarially-derived loss development factors and credit margins applicable to its insurance business generally.

(Compl. ¶14; Ex. A. at p.6.) Additionally, the Settlement Agreement contains an integration clause, which states:

> 11. **Entire Agreement / Severability**
>
> This Agreement constitutes the entire agreement between Lumbermens and Tower as respects its subject matter. All previous discussions and negotiations between the parties concerning the subject matter hereof are merged into this Agreement, which may not be modified or revised except by written amendment signed by both parties. If any provision of this Agreement shall be held void, illegal or unenforceable, the validity of the remaining provisions shall not be affected thereby.

(Compl. ¶14; Ex. A at p.7.)

Also on May 9, 2007, in connection with the Settlement Agreement, Tower and Lumbermens entered into a Stipulation Regarding Letter of Credit Requirements Under

Certain Insurance Policies ("Stipulation"). (Compl. ¶1.) Like the Settlement Agreement, the Stipulation discussed Lumbermens' annual review of collateral and adjustment thereof:

> 3.     On or about November 1, 2007, and at annual intervals thereafter, Lumbermens shall perform a review, pursuant to the Policies and incorporating Lumbermens' usual and customary methodology to determine the adequacy of the Collateral at such time and shall, when warranted, promptly cause an adjustment of the Collateral. For the avoidance of doubt, Lumbermens' usual and customary methodology shall involve the use of its loss development factors specified in the Policies and, if and when such contractual factors are not specified, shall incorporate Lumbermens' actuarially-derived loss development factors and credit margins applicable to its insurance business generally.

(Compl. ¶15; Ex. A. at par. 3.)

In November 2007, in accordance with the terms of the Settlement Agreement, Lumbermens conducted its annual collateral review. (Compl. ¶17.) Following that review and after determining the appropriate collateral adjustment, Lumbermens imposed a 35% "credit surcharge" upon Tower. (Compl. ¶17.)

On or about January 22, 2008, Tower wrote a letter to Kemper Insurance Companies ("Kemper") (as Lumbermens' representative), complaining about the amount of the "credit surcharge" and requesting documentation supporting the surcharge and explaining how it was determined. (Compl. ¶20; Ex. D.) Kemper responded to Tower's letter on or about February 11, 2008 and provided a thorough and detailed explanation of how Lumbermens methodology had been applied to determine the "credit surcharge:"

> I think you're generally aware of how our process works, but I'll walk you through it from soup to nuts in the interest of full disclosure.
>
> We begin by looking at actual unpaid losses, based on current case reserve levels and limiting each claim at the per-claim retention. We then multiply the unpaid limited retained losses by loss conversion factors to account for both (i) adverse development on the open claims, and (ii) the "true IBNR," or the potential for new or reopened claims. These loss

> conversion factors are sometimes expressly provided for in the insurance agreements, but when they are not, we resort to actuarially-derived factors based on Kemper's historical experience on the relevant lines of business.
>
> The above calculation yields a straight-up "collateral need," or the estimated amount of collateral we feel we need to hold to secure the ultimate retained losses. To this, we add a margin ranging from 15% to 75% -- to account for the fact that half the time our calculations will be deficient and half the time they will be conservative, and to make sure that we're erring on the side of eliminating the deficiencies.
>
> The varying margins are the product of both the policyholder's financial / credit risk and the seasoning of the losses, such that an older account with A rated credit will receive a 15% margin and a more recent account in Chapter 11 will get a 75% margin. Most accounts, written primarily in the last seven to ten years fall within the 25% to 35% margin range, depending largely on the insured's financials.

(Compl. ¶20; Ex. D.) Additionally, Lumbermens informed Tower, "Tower's 35% is what we would have assigned any similarly-situated policyholder, and it will decrease with the passage of time." (Compl. ¶21; Ex. E.). On or about February 14, 2008, Tower wrote another letter to Lumbermens, again demanding information regarding how the "credit surcharge" had been determined. (Compl. ¶22.)

Lumbermens has not provided Tower with any additional information regarding the imposition of the "credit surcharge" because Lumbermens is not required to do so, under the terms of the Settlement Agreement. (Compl. ¶23; Ex. A.)

### III. ARGUMENT

#### A. Standard for Adjudicating a Motion to Dismiss Pursuant to Rule 12(b)(6)

It is appropriate for a court to grant a motion to dismiss pursuant to Rule 12(b)(6) where the court finds that there is no set of facts in support of the plaintiff's claim that would entitle the plaintiff to relief. *McCalpin v. Retirement Bd. Of the Fireman's Annuity & Benefit Fund of Chicago*, No. 03 C 9274, 2004 WL 167291, at *1 (N.D. Ill.

2004) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Although the court must view the plaintiff's factual allegations in the light most favorable to the plaintiff, the court need not accept any legal conclusions alleged by the plaintiff. *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002); *Republic Steel Corp. v. Penn. Eng'g Corp.*, 785 F.2d 174, 183 (7th Cir. 1986).

Pursuant to Federal Rule of Civil Procedure 10(c), "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). If the factual allegations set forth in a pleading are contradicted by an exhibit thereto, the exhibit controls. *N. Ind. Gun & Outdoor v. City of South Bend*, 325 F.3d 449, 454 (7th Cir. 1998).

### B. Tower's Complaint Fails to State a Claim Upon Which Relief Can Be Granted

#### 1. Tower's Breach of Contract Claim (Count I) Should Be Dismissed

Tower claims that Lumbermens breached the Settlement Agreement by imposing an "unsupported and unjustified 35% credit surcharge" on Tower, following Lumbermens' annual collateral determination. (Compl. ¶29.) However, that claim is negated by the express terms of the Settlement Agreement, which imposes no limitation upon the amount of Lumbermens' annual collateral adjustment and does not require Lumbermens to provide any explanation or documentation to support the adjustment.

A review of the sole provision (Paragraph Seven) of the Settlement Agreement relied upon by Tower in its Complaint establishes that fact:

> On or about November 1, 2007, and at annual intervals thereafter, Lumbermens shall perform a review, pursuant to the Policies and incorporating Lumbermens' usual and customary methodology to determine the adequacy of the Collateral at such time and shall, when warranted, promptly cause an adjustment of the Collateral. For the

> avoidance of doubt, Lumbermens' usual and customary methodology shall involve the use of its loss development factors specified in the Policies and, if and when such contractual factors are not specified, shall incorporate Lumbermens' actuarially-derived loss development factors and credit margins applicable to its insurance business generally.

(Compl. ¶14; Ex. A at p.7.)

It is plain that the parties agreed that Lumbermens was to determine the appropriate collateral adjustment in accordance with its "usual and customary methodology." (*Id.*) Paragraph Seven further states that methodology would be based upon loss development factors either set forth in the applicable insurance policies or generally applied to Lumbermens' business. Nowhere, however, does Paragraph Seven or any other provision of the Settlement Agreement limit the amount of the collateral adjustment. Likewise, neither Paragraph Seven nor any other provision of the Settlement Agreement requires Lumbermens to provide any explanation or documentation to support the adjustment.

In the absence of any obligation actually set forth in the Settlement Agreement that Lumbermens is alleged to have breached, Tower's claims must be dismissed. This is precisely the situation that was addressed in *Cortina v. Hotel & Restaurant Employees Union*. No. 06 C 6850, 2008 WL 857165 (N.D. Ill. Mar. 31, 2008. In *Cortina*, the court dismissed the plaintiffs' claim against their employer for breach of a collective bargaining agreement. *Id.* at *1. The court considered the plaintiffs' factual allegations, compared them to the language of the agreement, and found, "Simply put, Plaintiffs cannot point to any provision of the CBA that confers a benefit on individual employees and gives rise to a contractual obligation by Defendant Union that could have been breached [by the conduct alleged by Plaintiff]." *Id.* The instant case is nearly identical to *Cortina*, and should be dismissed for the same reason. *See also McCalpin*, 2004 WL

1672981, at *3 (dismissing claim for breach of contract where the contract did not impose upon the defendant any obligation that the plaintiff claims was breached); *Skyview Film & Video, Inc. v. Safeco Life Ins. Co.*, 864 F. Supp. 755, 759 (N.D. Ill. 1994) (dismissing breach of contract claim where plain language of insurance policy contradicted allegations of complaint and did not entitle plaintiff to relief).

For these reasons, Count I should be dismissed.

### 2. Tower's Declaratory Judgment Claim (Count II) Should Be Dismissed

Count II of Tower's Complaint seeks a declarations by this Court that: (1) Lumbermens breached the Settlement Agreement by imposing a 35% "credit surcharge" upon Tower; (2) Lumbermens must provide Tower with an actuarial accounting of the November 2007 collateral re-determination that led to the imposition of the 35% "credit surcharge;" and (3) Lumbermens must provide Tower with an actuarial accounting to support any future collateral re-determination. (Compl. pp. 8-9.) However, this Court should dismiss Count II of Tower's Complaint for two main reasons.

First, just like Count I, the plain language of the Settlement Agreement negates Tower's claim for declaratory relief. As already explained, *supra* Sect. III.B.2., the Settlement Agreement neither: (1) imposes any limitation upon the amount of Lumbermens' annual collateral adjustment nor (2) requires Lumbermens to provide any explanation or documentation to support the adjustment. Dismissal is proper on this basis, alone.

Second, Count II should be dismissed because it is improper for Tower to seek a declaration that a contract has been breached. In such instances, the proper remedy is to assert a claim for breach of contract, which Tower attempts to do in Count I. *Household*

*Fin. Servs., Inc. v. N. Trade Mortgage Corp.*, No. 99 C 2840, 1999 WL 782072, at * 3 (N.D. Ill. Sept. 27, 1999) ("Plaintiff incorrectly couches a breach of contract action as a request for a declaratory judgment. The court therefore dismisses Count I.").

Accordingly, Count II should be dismissed.

### IV. CONCLUSION

For all these reasons, this Court should dismiss Plaintiff's Complaint.

Dated: June 20, 2008

LUMBERMENS MUTUAL CASUALTY COMPANY

By: s/ Timothy M. Schank
One of Its Attorneys

Randall M. Lending (ARDC No. 06198407)
Timothy M. Schank (ARDC No. 6275851)
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL  60601-1003
(312) 609-7500