IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOWER AUTOMOTIVE, LLC, and ) <br> TOWER AUTOMOTIVE, INC., ) <br>               Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> LUMBERMENS MUTUAL CASUALTY ) <br> COMPANY, ) <br>               Defendant. ) <br> ) <br> ) <br> ) | Case No. 08 CV 2218  NF <br> Judge Kendall <br> Magistrate Judge Keys |

### PLAINTIFFS TOWER AUTOMOTIVE LLC AND TOWER AUTOMOTIVE, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Defendant Lumbermens Mutual Casualty Company ("Defendant" or "Lumbermens") has articulated no basis whatsoever to dismiss Plaintiffs Tower Automotive LLC and Tower Automotive, Inc.'s ("Plaintiffs" or "Tower") breach of Settlement Agreement claims. Defendant's entire motion is based on the false premise that the Settlement Agreement and Release ("Settlement Agreement")[1] entered into by the parties places no obligations on Defendant and that it can arbitrarily impose whatever "credit surcharge" it chooses on top of Tower's workers compensation loss reserves.  However, the plain language of the Settlement Agreement does not allow Defendant the unfettered discretion it claims.  To the contrary, Defendant promised that it would <u>not</u> single Plaintiffs out by imposing discriminatory or punitive credit margins, but would rather calculate the required collateral solely based on its "usual and customary methodology," a methodology which must specifically "incorporate Lumbermens'

---

[1] The Settlement Agreement was attached to the Complaint as Exhibit A.  The parties also entered into a corresponding Stipulation Regarding Letter of Credit Requirements Under Certain Insurance Policies ("Stipulation"), which places similar obligations on Defendant with regard to the annual collateral reviews.  The Stipulation was attached to the Complaint as Exhibit B.

actuarially-derived loss development factors and credit margins applicable to its insurance business generally."

## FACTS

On May 9, 2007, the parties entered into a Settlement Agreement and Stipulation which ended previous litigation brought by Plaintiffs against Defendant. As part of the Settlement Agreement, the parties agreed, among other agreements, that Lumbermens would conduct annual reviews of collateral, beginning in November 2007, to determine the adequacy of collateral and, if warranted, adjust the collateral.

Paragraph 7 of the Settlement Agreement governs Lumbermens' obligations to reduce Tower's collateral to reflect Tower's payment of losses and the resolution of the remaining open claims in Tower's mature book of claims. Paragraph 7 provides in relevant part:

> On or about November 1, 2007, and at annual intervals thereafter, ***Lumbermens shall perform a review, pursuant to the Policies and incorporating Lumbermens' usual and customary methodology***, to determine the adequacy of the Collateral at such time and shall, when warranted, promptly cause an adjustment of the Collateral. For the avoidance of doubt, Lumbermens' usual and customary methodology shall involve the use of loss development factors specified in the Policies and, if and when such contractual factors are not specified, ***shall incorporate Lumbermens' actuarially-derived loss development factors and credit margins applicable to its insurance business generally***. These annual adjustments shall be further subject to the Stipulation referred to in Paragraph 8 below.

(Ex. A, Settlement Agreement ¶ 7) (emphasis added) (Compl. ¶ 14)

Paragraph 3 of the Stipulation (to which the last sentence of the above-quoted provision refers) states:

> On or about November 1, 2007, and at annual intervals thereafter (each an "Annual Redetermination"), Lumbermens shall perform a review, pursuant to the Policies and incorporating Lumbermens' usual and customary methodology, to determine the adequacy of the Collateral at such time and shall, when warranted, promptly cause and/or authorize an adjustment to the Collateral subject to the terms of this Stipulation. For the avoidance of doubt, Lumbermens' usual and customary methodology shall involve the use of loss development factors

2

specified in the Policies and, if and when such contractual factors are not specified, shall incorporate Lumbermens' actuarially-derived loss development factors and credit margins applicable to its insurance business generally.

(Ex. B, Stipulation ¶ 3) (Compl. ¶ 15)

Thus, under both the Settlement Agreement and Stipulation, Lumbermens is required, in making its annual collateral redeterminations, to use its "usual and customary methodology" which "shall involve the use of loss development factors specified in the Policies," or "incorporate Lumbermens' actuarially-derived loss developments factors and credit margins applicable to its insurance business generally." (Compl. ¶ 16)

Contrary to the obligations imposed by the Settlement Agreement and accompanying Stipulation, as part of the November 1, 2007 annual collateral redetermination, Lumbermens sought to impose a 35% credit surcharge on Tower. (Compl. ¶ 17) Lumbermens refused to explain the imposition of the credit surcharge and how it incorporated the factors set forth in the Settlement Agreement and Stipulation. (Compl. ¶¶ 20-24) Under the terms of the Settlement Agreement and Stipulation, Tower is not responsible or liable to Lumbermens for this 35% credit surcharge relating to the collateral redetermination. (Compl. ¶ 30) Plaintiffs bring this suit to enforce the Settlement Agreement and related Stipulation that Defendant negotiated, agreed to and signed.

## ARGUMENT

**I.    DEFENDANT HAS NOT MET ITS BURDEN UNDER RULE 12(b)(6).**

A plaintiff's complaint may only be dismissed when "it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892 *5 (N.D. Ill. May 27, 2008) (internal quotation marks omitted). "The purpose of a motion to dismiss under 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case." *Id.* In reviewing a

12(b)(6) motion to dismiss, a "court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the light most favorable to plaintiff." *Holtzman v. Turza*, No. 08 C 2014, 2008 WL 2510182 at *1 (N.D. Ill. June 19, 2008).

By its clear terms, the Settlement Agreement directs Lumbermens to perform its annual collateral review, "incorporating Lumbermens' usual and customary methodology." (Ex. A, Settlement Agreement ¶ 7)  The Settlement Agreement specifically states "[*f*]*or the avoidance of doubt*, Lumbermens' usual and customary methodology *shall* involve the use of its loss development factors specified in the Policies and, if and when such contractual factors are not specified, *shall* incorporate Lumbermens' actuarially-derived loss development factors and credit margins applicable to its insurance business generally." (*Id.*) (emphasis added)  Plaintiffs have alleged that Lumbermens did not do this in its November 7, 2007 collateral review, but instead applied an unjustified and unsupportable 35% credit surcharge, which does not reflect an adjustment based on the methodology set forth in the Settlement Agreement.  (Compl. ¶¶ 17-27)  As Plaintiffs have alleged, and what must be taken as true for purposes of Defendant's Motion:

- "Lumbermens arbitrarily imposed a 35% credit surcharge on Tower as part of the November 2007 annual collateral review."  (Compl. ¶ 5)

- "Tower's book of claims to which the surcharge applied is mature (the most recent policy expired in April 2003) with stable, well-established claims reserves."  (Compl.. ¶ 18)

- "[T]he credit surcharge is unprecedented in the industry and cannot be supported by the methodology required in the Settlement Agreement."  (Compl. ¶ 19)

- "Lumbermens' imposition of the 35% credit surcharge is not:  1) supported by the use of loss development factors specified in the Policies, or 2) by Lumbermens' actuarially-derived loss development factors or credit margins applicable to its insurance business generally."  (Compl. ¶ 24)

- "Lumbermens' imposition of the 35% credit surcharge does not reflect or incorporate loss development factors and credit margins which are 'actuarially-derived' as required in the Settlement Agreement."  (Compl. ¶ 25)

- "Lumbermens' imposition of the 35% credit surcharge does not reflect or incorporate loss development factors and credit margins which are 'applicable to [Lumbermens] insurance business generally' as required by the Settlement Agreement." (Compl. ¶ 26)

- "Lumbermens had no good-faith basis to impose a 35% credit surcharge on Tower as part of a collateral re-determination." (Compl. ¶ 27)

- "Under the terms of the Settlement Agreement and Stipulation, Tower is not responsible or liable to Lumbermens for this 35% credit surcharge relating to the collateral re-determination." (Compl. ¶ 30)

Defendant will have breached the Settlement Agreement if the collateral redetermination was not based solely on the factors identified in the Settlement Agreement. Plaintiffs are entitled to discovery to prove their allegations that Lumbermens breached the Settlement Agreement by imposing an arbitrary credit surcharge that is not actuarially justified and is not based on margins applicable to the Defendant's insurance business generally. Defendant has not demonstrated on the pleadings that Plaintiffs cannot prevail on the alleged facts. Defendant's Motion to Dismiss must therefore be denied.

## II. DEFENDANT'S INTERPRETATION OF THE SETTLEMENT AGREEMENT IS INCORRECT AND FAILS TO GIVE EFFECT TO THE LANGUAGE OF THE AGREEMENT.

Settlement agreements are contracts and their construction and enforcement "are governed by principles of local law applicable to contracts generally." *Air Line Stewards and Stewardesses Assoc., Local 550, TWU, AFL-CIO v. Trans World Airlines, Inc.*, 713 F.2d 319, 321 (7th Cir. 1983). "Courts must give full force and effect to ***each and every provision*** contained in these court-approved agreements," and avoid "read[ing] the sections out of context to achieve a desired result." *Id.* at 322 (emphasis added); *see also Medcom Holding Co. v. Baxter Travenol Labs.*, 984 F.2d 223, 226 (7th Cir. 1993) (In Illinois, "the intent of the parties to a contract must be determined with reference to the contract as a whole, not merely by reference to particular words or isolated phrases, but by viewing each part in light of the others.") (internal quotation marks omitted); *Bestfoods v. Gen. Warehouse & Transp.*, No. 99 C 8118, 2000 WL 1310670 at *3 (N.D. Ill. Sept. 13, 2000) (Contracts must be read so as to "giv[e] effect to all contractual provisions.").

As discussed above, the Settlement Agreement directs Lumbermens to perform an annual collateral review, "incorporating Lumbermens' usual and customary methodology" which in turn must be based on factors set forth in the Settlement Agreement. (Ex. A, Settlement Agreement ¶ 7) Both parties negotiated the Settlement Agreement and agreed to the language requiring use of Lumbermens' "usual and customary methodology" which "shall" involve or incorporate the factors identified in the Settlement Agreement. (*Id.*) Tower would not have agreed to a Settlement Agreement under which Lumbermens could make arbitrary annual collateral redeterminations. Instead, the parties added language tying the collateral redetermination to certain standards. (*Id.*); *see also Boatmen's Nat'l Bank of St. Louis v. Smith*, 835 F.2d 1200, 1203 (7th Cir. 1987) ("the primary object in construing a contract is to give effect to the intention

6

of the parties") (internal quotation marks omitted); *see e.g. Bestfoods*, 2000 WL 1310670 at *3 ("Under Illinois law, the primary objective is to give effect to the parties' intent.").

Defendant's arguments to the contrary rest on an impermissible reading of the Settlement Agreement that fails to give effect to all the terms of the Agreement. *See e.g. Air Line Stewards and Stewardesses Assoc.*, 713 F.2d at 321. Defendant's unsupportable reading of the Settlement Agreement would acknowledge Plaintiffs' **right** to annual collateral redeterminations, but would turn that right into an empty gesture by ignoring Defendant's **obligation** to make such redeterminations using its "usual and customary methodology" applicable "to its insurance business generally." *See Rosenberg v. CNA Fin. Corp.*, No. 04 C 8219, 2007 WL 2126085 *9-10 (N.D. Ill. July 23, 2007) (rejecting defendant's interpretation of plan documents where it would have allowed defendant to make material changes to plan documents but not be required to provide employees with notice "within a reasonable amount of time" as it promised in the plan documents).

Defendant's argument thus effectively reads out of the Settlement Agreement the bargained-for terms setting the standards by which the collateral redetermination must be conducted. *See Thompson v. Amoco Oil Co.*, 903 F.2d 1118, 1121 (7th Cir. 1990) (rejecting party's interpretation of contract which "would render specific contractual language mere surplusage"); *Boatmen's Nat'l Bank of St. Louis*, 835 F.2d at 1203 (rejecting party's interpretation of contract because it would ignore certain other provisions and recognizing that "[w]here the document contains both general and specific provisions relating to the same subject, the specific provisions controls"); *Air Line Stewards and Stewardesses Assoc.*, 713 F.2d at 321 (rejecting party's interpretation of Settlement Agreement because a court may not "read the sections out of context to achieve a desired result").

This case is similar to *Rosenberg* where the court applied "general principles of contract interpretation" to the specific terms contained in an employee benefits plan. 2007 WL 2126085 at *9. In *Rosenberg*, the defendant argued that notice regarding a material change to the plan was timely because it was given within the 210-day timeframe set forth by ERISA. *Id*. The court disagreed because in the plan documents, defendant stated that it would notify employees of material changes "within a reasonable amount of time." *Id.* The court rejected defendant's interpretation of the "reasonable notice" clause because it "effectively read the timeliness term out of the Plan." *Id.* The Court recognized that while under ERISA defendant was not required to give notification any sooner than it did, in the plan documents defendants "promised its employees something more–notice of any material changes 'within a reasonable amount of time.'" *Id.* at 10. In the present case, under the Settlement Agreement, Defendant must conduct an annual collateral review. And in the Settlement Agreement, Defendant has agreed to conduct that review using its "usual and customary methodology," which "shall incorporate Lumbermen's actuarially-derived loss development factors and credit margins applicable to its business generally." (Ex. A, Settlement Agreement ¶ 7)

Defendant has presented no basis—because there is none—for ignoring the express terms of the Settlement Agreement which require that Lumbermens conduct its collateral redeterminations using the standards set forth in the Settlement Agreement. Plaintiffs have alleged that Lumbermens failed to conduct its November 7, 2007 collateral redetermination pursuant to those standards and have more than sufficiently stated a cause of action.

The cases cited by Defendant are inapposite. For example, Defendant mistakenly claims that the "instant case is nearly identical to *Cortina*." (Def. Mem. of Law in Support of Mot. to Dismiss at 7 (citing *Corina v. Hotel Restaurant Employees Union*, No. 06 C 6850, 2008 WL

857165 (N.D. Ill. Mar. 31, 2008)).  However, *Cortina* did not deal with the straightforward application of state contract law.  Instead, *Cortina* involved a situation where the plaintiff union members claimed that the defendant union breached a collective bargaining agreement by "acquiescence in the creation and maintenance of the A and B Lists of banquet servers *by Defendant Hotel*."  (*Id.* at *9) (emphasis in original).  Interpreting federal law relating to collective bargaining agreements, the court held that plaintiffs could not maintain a breach-of-contract action against *defendant union* because there was no contractual duty placed upon *defendant union* relating to the lists kept solely by *defendant hotel*.  *See id.*; at 8 (applying case law interpreting Section 301 of the Labor-Management Relations Act to determine when an employee may state a cause of action for breach of a collective bargaining against a union).  In stark contrast, this case involves the simple application of state contract law to the Settlement Agreement between two parties, where the obligations claimed to have been breached are expressly provided for in the language of the Settlement Agreement.

The additional cases by Defendant stand for nothing more than the unremarkable proposition that a breach-of-contract cause of action cannot lie where it is based on a breach of an obligation not provided for in the agreement.  *See McCalpin v. Ret. Bd. of the Fireman's Annuity and Benefit Fund of Chicago*, No. 03 C 9274, 2004 WL 1672981 at *3 (N.D. Ill. July 28, 2004) (breach-of-contract claim dismissed where defendant's only obligations related to financing of the Fireman's Annuity and Pension Fund and plaintiff's complaint did not allege a breach of any such financing duty); *Skyview Film & Video v. Safeco Life Ins. Co.*, 864 F.Supp. 755, 758 (N.D. Ill. 1994) (no breach of contract where insured committed suicide during time period that under terms of insurance policy only entitled beneficiaries to return of premiums, not policy limit).  These cases have no bearing on the present case, because, as discussed above,

Plaintiffs have alleged breaches of obligations that are expressly provided for in the Settlement Agreement.

### III. DEFENDANTS HAVE PROPERLY STATED A CLAIM FOR DECLARATORY RELIEF.

For the reasons discussed above, Defendant is incorrect that "the plain language of the Settlement Agreement negates Tower's claim for declaratory relief." (Def. Mem. in Support of Mot. to Dismiss at 8) To the contrary, Plaintiffs have sufficiently alleged a breach of the plain language of the Settlement Agreement. (*See* Sections II, III, *supra*; Compl. ¶¶ 17-27).

Defendant's second ground for dismissal is contradicted by the very case it cites. In *Household Fin. Servs., Inc. v. Northern Trade Mortgage Corp.*, No. 99 C 2840, 1999 WL 782072 (N.D. Ill. 1999), over defendant's objection, the court held that the federal Declaratory Judgment Act governed the dispute. *Id*. at *2. It recognized that the Act "authorizes a court to 'declare the rights and other legal relationships of any interested party . . . whether or not further relief is or could be sought.'" *Id*. (citing 28 U.S.C. § 2201). The Act "enable[s] parties to understand their rights and liabilities so that they can adjust their future conduct," and "[a] request to construe the language of a contract to apprise the parties of their legal rights falls within the scope of [the Act]." *Id*. In *Household Financial Services*, however, the plaintiff did not "request the court to clarify the parties' rights under the [ ] agreement," but instead "request[ed] a judicial declaration that defendant breached the agreement." *Id*. at 3. The court then dismissed plaintiff's request for declaratory judgment with leave to amend as an action for breach of contract. *Id.*

In the present case, Plaintiffs seek declaratory relief that will "enable [the] parties to understand their rights and liabilities so that they can adjust their future conduct." Contrary to Defendant's characterization, Plaintiffs are not merely seeking a simple declaration that the

10

Settlement Agreement was breached.  *See id.*; (*see also* Compl. ¶¶ 32–33 (A–E))  Plaintiffs have requested specifically that the Court require Lumbermens to "provide an actuarial accounting of any future surcharge imposed upon Tower as part of any future annual collateral re-determination," as well as any other relief that is just and proper.  (Compl. ¶¶ 32-33 (A-E))  The collateral redeterminations required by the Settlement Agreement must occur on an annual basis for several years to come.  To avoid repetitive, yearly litigation over this same dispute, declaratory relief is clearly appropriate here.

The declaratory relief sought by Plaintiffs is precisely the type of relief permitted under the federal Declaratory Judgment Act.  Defendant has presented absolutely no basis for dismissal of Count II.  *See* 28 U.S.C. 2201 (a court "may declare the rights and other legal relations of any interested party seeking such declaration"); 28 U.S.C. 2202 ("Further necessary or proper relief based on a declaratory judgment or decree may be granted . . . against any adverse party whose rights have been determined by such a judgment."); *see e.g. Household Fin. Servs., Inc.*, 1999 WL 782072 at **2-3.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.

Respectfully submitted,

/s/ Andrew R. Running
Andrew R. Running
Amy C. Haywood
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
(312) 861-2000

Attorneys for TOWER AUTOMOTIVE, LLC and TOWER AUTOMOTIVE, INC.

DATED:    July 9, 2008