IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOWER AUTOMOTIVE, LLC and TOWER AUTOMOTIVE, INC., | |
| Plaintiffs, | |
| v. | Case No. 08 C 2218 |
| LUMBERMENS MUTUAL CASUALTY COMPANY, | Judge:  Hon. Virginia M. Kendall |
| Defendant. | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

### I. INTRODUCTION

The claims of Plaintiffs Tower Automotive, LLC and Tower Automotive, Inc. (collectively, "Tower") are contrary to the express terms of the Settlement Agreement, and Tower's Opposition to Defendant's Motion to Dismiss ("Tower's Response") fails to explain otherwise.  Contrary to Tower's Response, it is evident from the face of the Complaint that it is Tower—not Defendant Lumbermens Mutual Casualty Company ("Lumbermens")—that is trying to litigate its way out of the Settlement Agreement. Indeed, Tower's Response is tantamount to an admission that it has no basis for its attempts to assert a breach of the Settlement Agreement and that it is attempting to use this lawsuit to conduct a fishing expedition in discovery that would serve no other purpose than harass Lumbermens.  (Resp. p.5.)

Additionally, this Court should reject the arguments asserted by Tower in opposition to Lumbermens' Motion, for three main reasons.  First, Tower's Response— like its Complaint—mischaracterizes the language of the Settlement Agreement and attempts to have this Court read terms into the agreement that were simply not agreed to

by the parties.  Second, Tower's arguments in its Response that it has alleged facts to show any wrongdoing by Lumbermens are simply false.  Third, Tower's argument that it is entitled to a declaration that Lumbermens has breached the Settlement Agreement is contrary to law.

For these reasons, the arguments set forth in Tower's Response should be rejected, and each of Tower's claims should be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

## II. ARGUMENT

### A. Tower's Arguments in Support of Its Breach of Contract Claim (Count I) Should Be Rejected

#### 1. Tower's Interpretation of the Settlement Agreement Is Incorrect

Tower's argument that Lumbermens is attempting to mischaracterize any provision of the Settlement Agreement is completely baseless.  To the contrary, the parties' memoranda of law have focused upon the same provision (Paragraph Seven) of the Settlement Agreement.  Further, it is Tower that is attempting to impose obligations upon Lumbermens that are not set forth in Paragraph Seven or anywhere else in the Settlement Agreement.

Paragraph Seven states as follows:

On or about November 1, 2007, and at annual intervals thereafter, Lumbermens shall perform a review, pursuant to the Policies and incorporating Lumbermens' usual and customary methodology to determine the adequacy of the Collateral at such time and shall, when warranted, promptly cause an adjustment of the Collateral.  For the avoidance of doubt, Lumbermens' usual and customary methodology shall involve the use of its loss development factors specified in the Policies and, if and when such contractual factors are not specified, shall incorporate Lumbermens' actuarially-derived loss development factors and credit margins applicable to its insurance business generally.

(Compl. ¶14; Ex. A at p.7.)  Thus, it is clear from the plain language of the Settlement Agreement that:  (1) Lumbermens was to determine the appropriate collateral adjustment in accordance with its "usual and customary methodology;" and (2) that methodology would be based upon loss development factors either set forth in the applicable insurance policies or generally applied to Lumbermens' business.  Contrary to Tower's assertions in its Response (Resp. p.7.), Lumbermens has not only acknowledged its obligations under Paragraph Seven, but also acted in accordance with those obligations and provided a detailed explanation of the same to Tower, which is described at length below.  (Compl. ¶21; Ex. E.)

Tower's proposed interpretation of Paragraph Seven would grossly distort the plain contractual language.  Tower appears to be arguing Paragraph Seven somehow limits the amount of the collateral adjustment, which is simply not the case.  Likewise, neither Paragraph Seven nor any other provision of the Settlement Agreement requires Lumbermens to provide any explanation or documentation to support its adjustment.  Nevertheless, as noted herein, Lumbermens did provide a detailed explanation.

Additionally, Tower's attempt to distinguish *Cortina v. Hotel & Restaurant Employees Union* on the basis that it involved federal law is without merit.  (Resp. p.9.)  In *Cortina*, just as the instant case, the court addressed the issue of a purported claim for breach of a defendant's contractual duty, even though no such duty existed.  No. 06 C 6850, 2008 WL 857165 (N.D. Ill. Mar. 31, 2008).  As Tower concedes, this principle of law is well-established.  (Resp. p.9.)  Lastly, Tower attempts to support its argument with a string-citation to numerous cases, each of which stand for generally-applicable

principles of law, <u>none</u> of which are at issue on this motion.    (Resp. pp. 6-7.) Accordingly, Tower's own cases should be disregarded.

###    2.    It is Tower, not Lumbermens, that Has Failed to Satisfy its Burden under the Federal Rules of Civil Procedure

Tower's assertion that Lumbermens has failed to establish grounds for dismissal under Rule 12(b)(6) is without merit.  To the contrary, it is Tower that has failed to satisfy the applicable standards for pleading a legally-cognizable cause of action for breach of contract.

Tower concedes that in November 2007, in accordance with the terms of the Settlement Agreement, Lumbermens conducted its annual collateral review.  (Compl. ¶17.)  Following that review and after determining the appropriate collateral adjustment, Lumbermens imposed a 35% "credit surcharge" upon Tower.  (Compl. ¶17.)  On or about February 11, 2008, after Tower requested an explanation for how the credit surcharge was determined, Kemper Insurance Companies ("Kemper") (as Lumbermens' representative) provided a thorough and detailed explanation of how Lumbermens methodology had been applied to determine the "credit surcharge:"

> I think you're generally aware of how our process works, but I'll walk you through it from soup to nuts in the interest of full disclosure.
>
> We begin by looking at actual unpaid losses, based on current case reserve levels and limiting each claim at the per-claim retention.  We then multiply the unpaid limited retained losses by loss conversion factors to account for both (i) adverse development on the open claims, and (ii) the "true IBNR," or the potential for new or reopened claims.  These loss conversion factors are sometimes expressly provided for in the insurance agreements, but when they are not, we resort to actuarially-derived factors based on Kemper's historical experience on the relevant lines of business.
>
> The above calculation yields a straight-up "collateral need," or the estimated amount of collateral we feel we need to hold to secure the ultimate retained losses.  To this, we add a margin ranging from 15% to 75% -- to account for the fact that half the time our calculations will be

deficient and half the time they will be conservative, and to make sure that we're erring on the side of eliminating the deficiencies.

The varying margins are the product of both the policyholder's financial / credit risk and the seasoning of the losses, such that an older account with A rated credit will receive a 15% margin and a more recent account in Chapter 11 will get a 75% margin.  Most accounts, written primarily in the last seven to ten years fall within the 25% to 35% margin range, depending largely on the insured's financials.

(Compl. ¶21; Ex. E.)  Additionally, Kemper informed Tower, "Tower's 35% is what we would have assigned any similarly-situated policyholder, and it will decrease with the passage of time."  (Compl. ¶21; Ex. E.)  Additionally, it is noteworthy that Tower does not allege that any of the statements set forth in Exhibit E to its own Complaint are false.  To the contrary, it has incorporated those statements into its Complaint pursuant to Federal Rule of Civil Procedure 10(c).  To the extent Tower alleges in paragraph 31 of its Complaint that Lumbermens (either itself or through its representative Kemper) failed to provide an explanation of its credit surcharge, such allegations are refuted by Exhibit E, which controls over any inconsistent allegations by Tower.  *See N. Ind. Gun & Outdoor v. City of South Bend*, 325 F.3d 449, 454 (7th Cir. 1998).

Tower's Response cites to eight allegations—taken out of context of the rest of the Complaint—that it believes are sufficient to state a claim for breach of contract.[1] (Resp. pp. 4-5.)  However, reading the Complaint as a whole, it is clear that neither those allegations, nor any others in the Complaint, can sustain Tower's claims, for four reasons. First, each of those eight allegations must be disregarded as contrary to the language of the Settlement Agreement and Exhibit E of Plaintiff's Complaint.  *N. Ind. Gun & Outdoor* 325 F.3d 449 at 454.  Second, those conclusory allegations—to say nothing of

---

[1] The allegations relied upon by Tower in this portion of its Response are:  5, 18, 10, 24, 25, 26, 27, and 30.

Tower's Complaint as a whole—fall far short of the pleading standard articulated by Federal Rule of Civil Procedure 8(a) ("Rule 8(a)"), which requires a complaint to give the defendant notice of <u>both</u> the plaintiff's claim <u>and</u> the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also "grounds" on which the claim rests.") <u>Third</u>, Tower's allegation that its book of claims was mature with "stable, well-established claims reserves" (Compl. ¶18.) is irrelevant, because the Settlement Agreement did not require that to be a factor in the annual collateral determination. Moreover, as explained by Kemper in Exhibit E, the fact that Tower had recently been in bankruptcy was considered as a factor. (Compl. ¶21, Ex. E.) <u>Fourth</u>, Tower's citation to Paragraphs 19 and 26 of its Complaint is incomplete and misleading because Tower fails to mention that these allegations were made "on information and belief," which highlights the inadequacy of these allegations without providing any allegation for the basis of Tower's purported information.

Finally, Tower's Response acknowledges that it has no basis in fact for the allegations of its Complaint. Instead of identifying any grounds for claiming a breach by Lumbermens, Tower offers only a hypothetical statement that: "Defendants <u>will have</u> breached the Settlement Agreement <u>if</u> the collateral redetermination was not based solely on the factors identified in the Settlement Agreement." (Resp. p.5) (emphasis added). Tower then asserts that it is entitled to discovery in order to substantiate its allegations— which only underscores the baselessness of those allegations. (*Id.*) Tower's anticipated abuse of the discovery process and the associated expense of such a fishing expedition is

precisely why motions to dismiss are contemplated by the Federal Rules of Civil Procedure. *See Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 566 (6th Cir. 2003) ("The very purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery."). Lumbermens must not be forced to litigate Tower's baseless allegations in the hope that some set of facts may be unearthed during discovery that could support Tower's claims.

For each of these reasons, Tower's arguments should be rejected, and Count I should be dismissed.

### B. Tower's Arguments in Support of Its Declaratory Judgment Claim (Count II) Should Be Rejected

This Court should reject Tower's argument that the express terms of the Settlement Agreement do not negate its claim for declaratory relief. (Resp. p.10.) As already explained, *supra* Sect. III.B.2., the Settlement Agreement neither: (1) imposes any limitation upon the amount of Lumbermens' annual collateral adjustment nor (2) requires Lumbermens to provide any explanation or documentation to support the adjustment.

Moreover, Tower's argument that it is not seeking an improper declaration that the Settlement Agreement has been breached is contradicted by Tower's own Complaint. (Compl. p.8.) Further, Tower's Response does not dispute that such a declaration is legally impermissible. (Resp. pp. 10-11.) To the extent that Tower believes that the Settlement Agreement has been breached, it can assert a claim for breach—and, indeed, has done so in Count I. *See Household Fin. Servs., Inc. v. N. Trade Mortgage Corp.*, No. 99 C 2840, 1999 WL 782072, at *3 (N.D. Ill. Sept. 27, 1999) (Exhibit A) ("Plaintiff incorrectly couches a breach of contract action as a request for a declaratory judgment.

The court therefore dismisses Count I."). Tower's attempt to distinguish *Household* is baseless. In *Household*, just as here, the relief sought was a declaration that the subject contract had been breached, which was rejected by that court. *Id.* at *3. Thus, *Household* properly stands for the proposition that a plaintiff cannot attempt to cast a breach of contract claim as a claim for declaratory relief.

For each of these reasons, Tower's arguments should be rejected, and Count II should be dismissed.

## III.　CONCLUSION

For all these reasons and the reasons set forth in Lumbermens' Memorandum of Law in Support of its Motion to Dismiss, this Court should dismiss Plaintiff's Complaint.

Dated: July 24, 2008 　　　　　　　　　LUMBERMENS MUTUAL CASUALTY
　　　　　　　　　　　　　　　　　　　COMPANY


　　　　　　　　　　　　　　　　　　　By: _s/ Timothy M. Schank_____
　　　　　　　　　　　　　　　　　　　　　　　One of Its Attorneys

Randall M. Lending (ARDC No. 06198407)
Timothy M. Schank (ARDC No. 6275851)
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL  60601-1003
(312) 609-7500

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** was served

on

        Andrew R. Running
        Kirkland & Ellis LLP
        200 East Randolph Drive
        61st Floor
        Chicago, IL  60601

by electronic means on July 24, 2008.

                              <u>s/   Timothy M. Schank</u>

Westlaw.

Not Reported in F.Supp.2d                                                                                      Page 1
Not Reported in F.Supp.2d, 1999 WL 782072 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 782072 (N.D.Ill.))**

c
Household Financial Services, Inc. v. Northern
Trade Mortg. Corp.
N.D.Ill.,1999.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
HOUSEHOLD FINANCIAL SERVICES, INC.,
Plaintiff,
v.
NORTHERN TRADE MORTGAGE CORP., De-
fendant.
**No. 99 C 2840.**

Sept. 27, 1999.

*MEMORANDUM OPINION AND ORDER*

GETTLEMAN, J.
**\*1** Plaintiff Household Financial Services
("Household") has filed a two-count complaint
against defendant Northern Trade Mortgage Cor-
poration ("Northern"), alleging breach of a loan
purchase agreement. This case was removed from
state court pursuant to 28 U.S .C. §§ 1441(a),
1446(a). Plaintiff is a Delaware corporation with its
principal place of business in Illinois, and defend-
ant is a Florida corporation. Jurisdiction is therefore
based on diversity of citizenship, 28 U.S.C. § 1332.

In Count I, plaintiff requests declaratory relief in
the form of a judicial declaration that: (1) defendant
breached the loan purchase agreement; (2) under
the terms of the agreement, defendant is required to
repurchase a certain loan; and (3) defendant is re-
quired to indemnify plaintiff. In Count II, plaintiff
requests related monetary relief. Defendant has
filed motions to dismiss the complaint, to strike
Household's request for legal fees, and to transfer
venue to the Southern District of Florida.

FACTS

In November 1997, the parties entered into a loan
purchase agreement. Pursuant to this agreement,
plaintiff purchased from defendant a loan to James
Del Rio ("Del Rio"). Plaintiff's complaint alleges
that Del Rio never paid the first monthly payment
due under the loan. According to plaintiff, the terms
of the agreement require defendant to repurchase
the Del Rio loan in the event of default. Plaintiff al-
leges that defendant refuses to repurchase the loan.

Defendant claims that Del Rio, a Florida resident,
provided fraudulent information to his mortgage
broker, Global Mortgage Investors ("Global"), to
obtain the disputed loan from defendant. According
to defendant, Del Rio, Global, the closing agent
Southeast Land Title Corporation ("Southeast"),
and the title and closing service insurer Stewart
Title Guaranty Company ("Stewart Title"), may be
liable to defendant for plaintiff's claims. Defendant
therefore asks this court to transfer venue to Florida
so that it can implead these parties.

DISCUSSION

I. Motion to Dismiss

In ruling on a motion to dismiss for failure to state
a claim, the court considers "whether relief is pos-
sible under any set of facts that could be established
consistent with the allegations."*Bartholet v. Re-
ishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992).
The purpose of a motion to dismiss is to test the
sufficiency of the complaint, not to decide its mer-
its. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520
(7th Cir.1990). For purposes of a motion to dismiss,
the court accepts the factual allegations of the com-
plaint as true and draws all reasonable inferences in
favor of the plaintiff. *Travel All Over the World,
Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423,
1428 (7th Cir.1996).

Defendant moves to dismiss plaintiff's request for a
declaratory judgment, arguing that plaintiff has es-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                  Page 2
Not Reported in F.Supp.2d, 1999 WL 782072 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 782072 (N.D.Ill.))**

sentially brought a breach of contract claim, and that under Illinois law, such a claim is not a proper subject for a declaratory judgment. Plaintiff responds that the federal rather than the state declaratory judgment statute applies to the instant case, and that plaintiff is entitled to relief under federal law.

**\*2** It has long been settled that "[u]nder the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."*Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427 (1996). The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, is a procedural statute. *SeePowers v. United States of America,* 218 F.2d 828, 829 (7th Cir.1955). The Illinois declaratory judgment statute, 735 ILCS § 5/2-701, is likewise a procedural rule that creates no substantive rights. *Office of State's Attorney v. Illinois Human Rights Comm'n,* 200 Ill.App.3d 151, 155 (2nd Dist.1990) ("The declaratory judgment procedure does not create substantive rights or duties but merely affords a new, additional, and cumulative procedural method for their judicial determination."); *accordMack v. Plaza DeWitt Ltd. Partnership,* 137 Ill.App.3d 343, 349 (1st Dist.1985). The federal Declaratory Judgment Act therefore governs the present dispute. *SeeIllinois ex rel. Barra v. Archer Daniels Midland Co.,* 704 F.2d 935, 939 (7th Cir.1983) ( "[T]he amended complaint does not mention the Declaratory Judgment Act but instead asks for a declaratory judgment under the Illinois Civil Practice Act, which is inapplicable to suits in federal court.").

Defendant incorrectly argues that a federal court should apply federal procedural law only if the federal rule of procedure conflicts with state law. Although it is true that "if a duly promulgated federal rule of procedure conflicts with state law, the Rules Enabling Act, 28 U.S.C. § 2072, commands a federal court to apply its rule of procedure unless to do so would abridge a substantive right under state law,"*In re Air Crash Disaster Near Chicago, Ill., On May 25, 1979,* 803 F.2d 304, 313-14 (7th Cir.1986) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938)), defendant erroneously claims that because there is no conflict between the state and federal declaratory judgment acts, the federal court should apply state law. Defendant cites a Second Circuit decision, *118th East 60th Owners, Inc. v. Bonner Properties, Inc.,* 677 F.2d 200 (2d Cir.1982), for this proposition. *Bonner* is inapposite. The state procedural rule in *Bonner* was "an integral part of [the state's] substantive law of limitations."*Id.* at 204.The court in that case therefore held that applying the federal declaratory judgment act "would ... directly undermine state substantive policies."*Id.* at 204-05.The court concluded: "In the absence of a direct conflict between a federal statute or rule and the state policy, we need not override the state substantive policy ..."*Id.* at 205.No state substantive policy is implicated in the instant case. The court therefore follows the well-settled practice of applying federal procedural law this suit.

Defendant argues further that even if the court determines that the federal statute governs, the court should find that the federal act does not entitle plaintiff to a declaratory judgment. The Declaratory Judgment Act authorizes a court to "declare the rights and other legal relationships of any interested party ... whether or not further relief is or could be sought."28 U.S.C. § 2201. The purpose of the act is to enable parties to understand their rights and liabilities so that they can adjust their future action to avoid accruing avoidable damages. *Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 577 (7th Cir.1994). A request to construe the language of a contract to apprise the parties of their legal rights falls within the scope of the Federal Declaratory Judgment Act. *SeeLyons Sav. & Loan Ass'n v. Geode Co.,* 641 F.Supp. 1313, 1319 (N.D.Ill.1986). A plaintiff uncertain of his contractual rights may seek declaratory relief before exercising those rights. *SeeCertified Grocers Midwest, Inc. v. New York Ins. Co.,* 702 F.Supp. 1384, 1388 (N.D.Ill.1992). Similarly, a plaintiff uncertain about being in breach of a contract may seek a declaratory

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 1999 WL 782072 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 782072 (N.D.Ill.))**

judgment to avoid accruing avoidable damages. *SeeGruntal & Co., Inc. v. Steinberg,* 837 F.Supp. 85, 89, (D.N.J.1993).

**\*3** Plaintiff does not request the court to clarify the parties' rights under the loan purchase agreement. Rather, plaintiff requests a judicial declaration that defendant breached the agreement. Plaintiff incorrectly couches a breach of contract action as a request for a declaratory judgment. The court therefore dismisses Count I. Plaintiff's request for a declaratory judgment is denied with leave to amend the complaint as an action for breach of contract.

## II. Motion to Strike

Defendant has filed a motion to strike plaintiff's request for attorney's fees. Under Fed.R.Civ.P. 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."Motions to strike are not favored, and the pleading will be stricken only when it is "patently defective and could not succeed under any circumstances."*Mobley v. Kelly Kean Nissan, Inc.,* 864 F.Supp. 726, 732 (N.D.Ill.1993). Defendant argues that the indemnification clause for attorney's fees in the agreement between the parties applies to suits arising from third party claims only, not to suits arising between the parties.

"Under the American Rule, a successful party may not recover attorney fees or the costs of litigation in the absence of a statute or an agreement of the parties."*Tibor Machine Prod., Inc. v. Freudenberg-Nok General Partnership,* 1996 WL 535338, at 8 (N.D.Ill. Sept. 19, 1996) (citing *In re Matter of Estate of Dyniewicz,* 648 N.E.2d 1076, 1085 (Ill.App.Ct.1995)). Sections 10.1 and 10.2 of the loan purchase agreement state in pertinent part that if the buyer or the seller breaches the warranties in the agreement, the breaching party will indemnify the non-breaching party for legal fees. Defendant argues that the indemnification provisions discussed in §§ 10.1 and 10.2 do not apply unless a

third party files a claim against one of the parties to the agreement. Defendant relies on § 10.3 to support this argument. Section 10.3 is entitled "Indemnification Procedures," and states that within 10 days of the filing of a third party claim, the indemnified party should deliver a claim notice to the indemnifying party.

Plaintiff responds that although "[i]ndemnity often means recompense of an outlay to a third party," the term indemnity can also cover restitution and general compensation. *SeeBalcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.,* 73 F.3d 150, 153 (7th Cir.1996). According to plaintiff, § 10.3 describes the procedure for third party claims, while §§ 10.1 and 10.2 require that in the event of breach by one party, that party must indemnify the other party. Plaintiff argues that §§ 10.1 and 10.2 resemble the agreement in *Balcor,* which the Seventh Circuit interpreted as requiring one party to indemnify the other. The agreement in *Balcor* stated that the defendant would " 'hold [plaintiff] harmless ... against any ... expenses (including, without limitation, attorneys' fees and expenses) ... incurred by [plaintiff] as a direct or indirect result of ... any breach or default by [defendant]." ' *Id.* at 153 (quoting the parties' agreement). The Seventh Circuit held that because the defendant's default had led the plaintiff to incur attorney's fees, the indemnity provision required the defendant to compensate the plaintiff for this loss.

**\*4** Plaintiff is correct that the language of §§ 10.1 and 10.2 of the agreement in the instant case is similar to the above-quoted clause in the *Balcor* agreement. Section 10.1 provides in pertinent part: "Seller [defendant] agrees to indemnify ... Buyer [plaintiff] and to reimburse [Buyer] for, any ... claim (including, without limitation, all Legal Fees) ... resulting from ... (ii) Seller's breach of any of its representations and warranties contained in this Agreement; or (iii) Seller's breach of or failure to perform any of its covenants or agreements contained in or made pursuant to this Agreement."Defendant argues that the foregoing indem-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 4
Not Reported in F.Supp.2d, 1999 WL 782072 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 782072 (N.D.Ill.))**

nification provision is different from that in *Balcor* because § 10.3 explicitly limits §§ 10.1 and 10.2 to situations in which a third party sues either plaintiff or defendant for breaching the agreement.

Under Illinois law, a court must consider the contract as a whole, giving meaning and effect to each provision. *Lewis X. Cohen Insurance Trust v. Stern,* 297 Ill.App.3d 220, 228 (1st Dist.1998). Although the parties themselves can bring a claim for breach of the loan purchase agreement, a third party cannot bring such a claim. Defendant's argument therefore does not give effect to § 10.1, which describes the indemnification procedures in the event one of the parties breaches the agreement. The court concludes that §§ 10.1 can be construed as enabling plaintiff to recover attorney's fees for defendant's breach. Because the pleading is not "patently defective," the court denies defendant's motion to strike plaintiff's request for fees.

### III. Motion to Transfer Venue

Defendant has filed a motion to transfer venue to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). A transfer is appropriate under § 1404(a) where the moving party demonstrates: (1) venue is proper in both the transferor and transferee court; (2) the transfer is for the convenience of parties and witnesses; and (3) the transfer is in the interest of justice. *SeeCoffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir.1986)."The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion of the trial judge."*Id.*

Venue is proper in this court. Venue is also proper in the requested transferee district pursuant to 28 U.S.C. § 1391(a)(1), because defendant is a Florida corporation. The only issue, therefore, is whether transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice.

### A. Convenience of Parties

Defendants, as the moving parties, must show that the "transferee forum is clearly more convenient" than the transferor forum. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F .2d 1286, 1293 (7th Cir.1989) (citing *Coffey,* 796 F.2d at 219-20). Moreover, defendants must demonstrate that a transfer will promote the efficient administration of justice; they may not simply shift the inconvenience from one party to another. See*Black v. Mitsubishi Motors Credit of America, Inc.,* 1994 WL 424112, at *2 (N.D.Ill. Aug. 10, 1994).

**\*5** Household's principal place of business is in Illinois, although it has an office in the Middle District of Florida. Northern's sole place of business is in Florida. Under § 1404(a), "[a] plaintiff's choice of forum is entitled to substantial weight ... particularly where it is also the plaintiff's home forum."*Vandeveld v. Christoph,* 877 F.Supp. 1160, 1167 (N.D.Ill.1995). Plaintiff's choice of forum favors litigating this action in the Northern District of Illinois.

Moreover, the loan purchase agreement at issue contains a clause entitled "Choice of Forum," which provides that "any judicial proceeding" brought against any party to the agreement "shall be brought" in Illinois state or federal court.[FN1] Defendant focuses on the part of the clause in which the parties consent to personal jurisdiction in Illinois, and argues that it has merely consented to jurisdiction, and not to venue. The clear language of the clause demonstrates, however, that defendant has both agreed to venue in Illinois and has consented to be subject to jurisdiction in Illinois. The clause in the instant case is similar to the clause discussed by the Seventh Circuit in *Paper Express. Ltd. v. Pfankuch Maschinen GmbH,* 972 F.2d 753, 756 (7th Cir.1992), in which the court held: "The phrase 'shall be filed,' coupled with the phrase 'all disputes,' clearly manifests an intent to make venue compulsory and exclusive."*Id.* at 756."The presence of a valid forum selection clause prevents a defendant from asserting its own

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 5
Not Reported in F.Supp.2d, 1999 WL 782072 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 782072 (N.D.Ill.))**

inconvenience as a reason supporting its motion to transfer."*FUL Inc., v. Unified School Dist. No. 204,* 839 F.Supp. 1307, 1311 (N.D.Ill.1993). The court therefore does not consider defendant's argument that it will be inconvenienced by litigating in this court. The convenience of the parties weighs in favor of plaintiff.

> FN1. Clause 12.14 of the agreement states: "Any judicial proceeding brought against any of the parties hereto with respect to this Agreement shall be brought in any court of competent jurisdiction in Cook County, Illinois, ... or in the Federal District Court for the Northern District ... of Illinois ... irrespective of where such party may be located at the time of such proceeding, and by execution and delivery of this Agreement, each of the parties to this Agreement hereby consents to the exclusive jurisdiction of any such court and waives any defense or opposition to such jurisdiction ."

**B. Convenience of Witnesses**

In determining the convenience of witnesses, several factors are evaluated, including: (1) the number of witnesses located in each district; (2) access to the sources of proof; and (3) the situs of material events. *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 621 F.Supp. 780, 782 (N.D.Ill.1985). The court must consider not only the number of witnesses located in each forum but also the nature and importance of their testimony.*Rohde v. Central R.R. of Indiana,* 951 F.Supp. 746, 748 (N.D.Ill.1997).

Plaintiff states that its witnesses and documentary proof are located in Illinois. Defendant argues that this case should be transferred because a number of its non-party witnesses are located in Florida. Plaintiff disputes that these witnesses are necessary, and argues that defendant has not provided evidence that the testimony of these witnesses will be material. *SeeHeller Financial,* 883 F.2d at 1293-94

("[Defendant] supplied nothing in the way of affidavits, depositions, stipulations, or any other type of document containing facts tending to establish who (specifically) it planned to call or the materiality of that testimony."). Defendant makes no attempt to cure this defect in its reply brief. Although Del Rio himself is a Florida resident and may well be an important non-party witness, defendant has not carried its burden of showing that a significant number of non-party witnesses reside in Florida. Moreover, even if there are many non-party witnesses who cannot be compelled to testify before this court, those witnesses depositions can be taken, and this court can view video depositions or read transcripts of the witnesses' testimony.

***6** Defendant provides the declaration of one witness it plans to call, Emene Diego, defendant's CEO. Because Diego is a party employee, however, there is a strong presumption that he will be available wherever this case is tried. The same principal holds true for the numerous other employees of plaintiff and defendant whom defendant plans to call. The number of witnesses located in Florida therefore do not militate transfer.

With respect to the second factor, each side argues that the court in its chosen forum will have easier access to sources of proof. Documents and records, however, are easily transportable. *See, e.g.,Law Bulletin Publishing, Co. v. LRP Publications, Inc.,* 992 F.Supp. 1014, 1018 (N.D.Ill.1998) ("The court is satisfied ... that either party can easily bring to the district in which the case is litigated those documents that are not there already."); *Arena Football League, Inc. v. Roemer,* 947 F.Supp. 337, 341 (N.D.Ill.1996) ("Defendants have not demonstrated that they cannot bring the critical documents to this district."). Accordingly, this element does not weigh in favor of transfer.

Finally, defendant argues that transfer is appropriate because Florida is the situs of the material events. According to defendant, the material event in the instant case was the execution of the loan purchase agreement. Defendant argues that all con-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 6
Not Reported in F.Supp.2d, 1999 WL 782072 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 782072 (N.D.Ill.))**

tacts leading up to the execution of the agreement occurred in Florida between defendant's Miami office and plaintiff's Tampa office. Plaintiff responds that the material event was Del Rio's failure to make his first loan payment, an event that led an employee in plaintiff's Illinois office to send defendant the repurchase demand, and that the instant case arises out of defendant's refusal of that demand. Plaintiff also argues that the witnesses who serviced the loan reside in Illinois. The court finds that this factor does not point to either forum. In sum, the convenience of the witnesses does not favor transfer.

C. Interests of Justice

The public interest factors that are relevant under a Section 1404 analysis include: (a) the relation of the community to the occurrence at issue in the litigation and the desirability of resolving controversies in their locale; (b) the court's familiarity with applicable law; and (c) the congestion of respective court dockets and the prospect for earlier trial. *See*Hughes v. Cargill, Inc., 1994 WL 142994, at *2 (N.D.Ill. Apr. 14, 1994).

In the instant case, the overall interests of justice suggest that transfer to Florida is inappropriate. Both Illinois and Florida courts have an interest in hearing claims that involve their residents. With respect to the second interests of justice factor, defendant claims that cases pending in the Southern District of Florida have a marginally shorter median time from filing to trial (22 months, as compared to 25 months for cases pending in the Northern District of Illinois), and that Florida courts have a smaller percentage of cases on the six-month list.FN2Plaintiff responds that Illinois courts have a shorter median time from filing to final disposition, but offers no evidence in support of this contention. The numbers defendant offers, however, suggest that "it is not markedly more economic or efficient to have the instant case pending in the Northern District of Indiana rather than in the Northern District of Illinois."*TIG Ins. Co. v. Brightly Galvanized

*Prod., Inc.,* 911 F.Supp. 344, 346-47 (N.D.Ill.1996).

> FN2. Defendant supports this claim by citing to a document disseminated by the Administrative Office of United States Courts.

*7 Moreover, the second factor of the interests of justice test militates against transfer. The agreement between the parties requires Illinois law to be controlling. Assuming plaintiff amends its complaint in accordance with the instant order, the breach of contract claim will be governed by Illinois law. Although defendant is correct that other courts are capable of interpreting Illinois law, in diversity actions it is considered advantageous to have federal judges who are familiar with the applicable state law. *Coffey,* 796 F.2d at 221.

In its reply brief, defendant makes much of the fact that it has filed suit in state court in Florida against the parties it claims are the real culprits: Stewart Title, Southeast, Global, and others. If this court transfers the case to the Southern District of Florida, defendant will be able to implead those parties. "The ability of a defendant to implead third parties in the transferee forum, which parties it cannot implead in the transferor forum ... [is a] relevant and important but not determinative factor[ ] on a motion to transfer."*Hervey v. United States,* 450 F.Supp. 1148, 1149 (E.D.Wis.1978). Assuming that these parties could not be brought into the instant case, the court finds that this factor weighs in favor of transfer, because avoiding "duplicative and piecemeal litigation" may promote judicial economy, *see*Houk v. Kimberly-Clark Corp., 613 F.Supp. 923, 931 (W.D.Mo.1985).

As plaintiff notes, the instant case involves defendant's alleged failure to repurchase a single loan. While defendant may have a claim against other parties for misrepresentations in connection with that loan, that fact alone does not require this court to transfer the instant case to Florida. The court finds that defendant has not carried its burden of demon-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 7
Not Reported in F.Supp.2d, 1999 WL 782072 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 782072 (N.D.Ill.))**

strating that transfer would clearly promote the convenience of the parties and the witnesses and the interests of justice. Accordingly, defendant's motion to transfer is denied.

Plaintiff is directed to file an amended complaint in accordance with this order on or before October 8, 1999. Defendant shall respond thereto on or before October 29, 1999. This matter is set for a report on status on November 2, 1999, at which time the parties are to present a definitive discovery plan.

N.D.Ill.,1999.
Household Financial Services, Inc. v. Northern Trade Mortg. Corp.
Not Reported in F.Supp.2d, 1999 WL 782072 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.